### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRANDON JAMAL FLANDERS,** | : | **Civil No.  1:20-CV-1526** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **KILOLO KIJAKAZI,** | : | |
| **Acting Commissioner of Social Security[1],** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

## I.  Introduction

Social Security appeals are judged by a deferential standard of review, but the courts have imposed a clear burden of articulation upon Administrative Law Judges (ALJs) in order to facilitate this review. At a minimum, this articulation responsibility means that the ALJ's decision  must provide a logical nexus between any factual findings and ultimate functional capacity and disability determinations.

We are reminded of this familiar principle in the instant case. Brandon Flanders applied for disability and supplemental security insurance benefits in June

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g) Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

of 2017, citing a cascading constellation of physical and emotional impairments, including anxiety, depression, attention deficit hyperactivity disorder, substance abuse, degenerative disc disease, diabetes, neuropathy, plantar fasciitis, and gout. (Tr. 23). With respect to Flanders' undisputed emotional impairments, two medical experts opined that Flanders suffered from marked or moderate impairments when it came to interacting with the public, coworkers, or supervisors. Thus, there was a unanimity of opinions with respect to this crucial component of employment in the workplace. All medical experts agreed that Flanders was moderately to markedly impaired in these spheres of workplace activity.

In the decision denying Flanders' disability claim, the ALJ expressly found that one of these medical opinions, which concluded that Flanders was markedly limited in interacting with the public and moderately impaired in dealing with co-workers and supervisors, was "very persuasive." (Tr. 30). Yet paradoxically, the ALJ crafted a residual functional capacity assessment for Flanders which compelled him to do that which this persuasive medical opinion stated he could not do; that is, the RFC required Flanders to engage in "frequent interaction with supervisors, coworkers and the public." (Tr. 26).

There is no logical nexus between the factual finding that Flanders suffers from these significant impairments when it comes to interacting with others and this

RFC assessment that limits him to work that requires frequent interaction with others, work that Flanders cannot do given the medical opinions evidence that the ALJ found to be very persuasive. Therefore, we conclude that the ALJ's burden of articulation has not been met in this appeal and remand this case for further consideration and evaluation of the medical opinion evidence.

## II.    <u>Statement of Facts and of the Case</u>

On June 26, 2017, Brandon Flanders applied for disability and supplemental security insurance benefits, citing an array of physical and emotional impairments, including anxiety, depression, attention deficit hyperactivity disorder (ADHD), substance abuse, degenerative disc disease, diabetes, neuropathy, plantar fasciitis, and gout. (Tr. 23).[2] Flanders was born in 1970 and was 46 years old at the time of the alleged onset of his disability. (Tr. 31). The ALJ found that the emotional impairments claimed by the plaintiff were well documented in Flanders' treatment records and were severe impairments. (Tr. 23, 26-31). Thus, Flanders' severe depression, anxiety, and ADHD are entirely undisputed in this record.

The significant ways in which these mental health conditions impaired Flanders' ability to interact with the public, coworkers, and supervisors are also

---

[2] On appeal, only Flanders' emotional impairments are at issue. Therefore, we will limit our discussion to these emotional impairments.

entirely uncontested. Two medical opinions addressed this issue. On September 12, 2017, Dr. Anthony Galdieri, a state agency expert, reviewed Flanders' treatment records and concluded that the plaintiff was markedly limited in his ability to interact with the public and moderately impaired in his ability to work with others and take direction from supervisors. (Tr. 95). Dr. Galdieri's conclusions, in turn, were entirely consistent with the findings of a consulting examining source, Dr. Andrew Cole, who reported on August 31, 2017 that Flanders suffered from marked impairments when it came to interacting with the public and moderate to marked limitations interacting with coworkers and supervisors. (Tr. 511). Thus, there was a complete unanimity of medical opinions that Flanders' emotional impairments significantly restricted his ability to interact with the public, coworkers, and supervisors.

It is against the backdrop of this uncontested evidence that the ALJ conducted a hearing in Flanders' case on December 6, 2018. (Tr. 46-81). Flanders and a vocational expert both testified at this hearing. In his testimony, Flanders, once again, underscored that he suffered from emotional impairments which restricted his ability to work. (Tr. 65). Despite this undisputed evidence, in fashioning a hypothetical question for the vocational expert, the ALJ followed a curious course which was not further explained on the record: The ALJ's hypothetical limited Flanders to work which all medical sources agreed he could not do—namely, work

4

involving frequent interaction with the public, coworkers, and supervisors. (Tr. 75). Given the ALJ's stated requirement that Flanders frequently interact with others in the workplace, the vocational expert identified jobs in the national economy which Flanders could perform. (Tr. 75-78). The ALJ never inquired of the vocational expert whether marked or moderate impairments in Flanders' ability to interact with others would limit his employability. Thus, the hypotheticals presented to the vocational expert never encapsulated Flanders' true mental condition as found by all opining medical sources.

Following this hearing on May 1, 2019, the ALJ issued a decision denying Flanders' application for benefits. (Doc. 17-33). In that decision, the ALJ first concluded that Flanders had not engaged in substantial gainful activity since the alleged date of onset of his disability. (Tr. 23). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Flanders' anxiety, depression, and ADHD were all severe impairments. (Tr. 23). At Step 3, the ALJ determined that Flanders did not have an emotional impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 23-25).

Having acknowledged the uncontested medical evidence, which revealed that Flanders suffered from a cascading array of emotional impairments, the ALJ then

went on to evaluate the medical opinions that unanimously agreed that these mental health conditions resulted in marked to moderate limitations on Flanders' ability to interact with the public, coworkers, and others. (Tr. 30).  The ALJ found that Dr. Cole's consulting, examining source opinion was not persuasive. (Id.)  However, the ALJ declared that Dr. Galdieri's state agency expert opinion, which concluded that the plaintiff was markedly limited in his ability to interact with the public and moderately impaired in his ability to work with others and take direction from supervisors, was "very persuasive." (Id.)

Having declared this medical opinion to be very persuasive, the ALJ then fashioned an RFC for Flanders which directly contradicted that opinion and all of the medical evidence relating to Flanders' emotional conditions.  On a record that reflected complete agreement that Flanders suffered moderate to marked impairments in working with others and interacting with the public, the ALJ 's RFC commanded that Flanders was "limited to frequent interaction with supervisors, coworkers and the public." (Tr. 26). Thus, the ALJ's RFC determination, in effect, compelled Flanders to work only in professions that all agreed he was not psychologically equipped to handle.

The ALJ then found that Flanders could not perform his past work but retained the capacity to perform other jobs that existed in significant numbers in the national

6

economy. (Tr. 31-33). Having reached these conclusions, the ALJ determined that Flanders had not met the demanding showing necessary to sustain his claim for benefits and denied this claim. (Tr. 33).

This appeal followed. (Doc. 1). On appeal, Flanders challenges the adequacy of the ALJ's explanation of this RFC determination, which rejected every medical source opinion in favor of an RFC which required Flanders to only do work which he was mentally ill equipped to perform. On these facts, as discussed below, we conclude that the ALJ's burden of articulation has not been met in this appeal and remand this case for further consideration and evaluation of the medical opinion evidence.

III.  **Discussion**

A.    **Substantial Evidence Review – the Role of this Court**

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988).  Substantial

evidence is less than a preponderance of the evidence but more than a mere scintilla.

<u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).  A single piece of evidence is not

substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a

conflict created by the evidence.  <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir.

1993).  But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's decision]

from being supported by substantial evidence." <u>Consolo v. Fed. Maritime Comm'n</u>,

383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

<u>Leslie v. Barnhart</u>, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in

this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency
> factfinding. <u>T-Mobile South, LLC v. Roswell</u>, 574 U.S. ——, ——,
> 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-
> evidence standard, a court looks to an existing administrative record
> and asks whether it contains "sufficien[t] evidence" to support the
> agency's factual determinations. <u>Consolidated Edison Co. v. NLRB</u>,
> 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis
> deleted). And whatever the meaning of "substantial" in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial

evidence, this Court has said, is "more than a mere scintilla." Ibid.; see,
e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks
omitted). It means—and means only—"such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion."
Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v.
Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999)
(comparing the substantial-evidence standard to the deferential clearly-
erroneous standard).

Biestek, 139 S. Ct. at1154.

The question before this Court, therefore, is not whether the claimant is

disabled, but rather whether the Commissioner's finding that she is not disabled is

supported by substantial evidence and was reached based upon a correct application

of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205,

at *1 (M.D.Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote

a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F.

Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of

a claim requires the correct application of the law to the facts."); see also Wright v.

Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal

matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review

of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential

standard of review. First, when conducting this review "we are mindful that we must

not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777

F.3d 607, 611 (3d Cir. 2014) (citing <u>Rutherford</u>, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. <u>Id</u>. at 120; <u>see Jones v. Barnhart</u>, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "<u>Burnett</u> does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." <u>Jones</u>, 364 F.3d at 505.

<u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

B.    **Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a).   To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).  To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.  42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.   20 C.F.R. §§404.1520(a), 416.920(a).  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe

11

impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).   In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21,

2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller, 962 F.Supp.2d at 778–79 (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7

(M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting, like that presented here,  where well-supported medical sources have opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon

14

other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington, 174 F. App'x 6; Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113; see also Metzger v. Berryhill, 2017 WL 1483328, at *5; Rathbun v. Berryhill, 2018 WL 1514383, at *6.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis

for his finding." <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F. 3d 429, 433 (3d Cir. 1999).

**C.**     <u>**This Case Should Be Remanded.**</u>

This case presents a striking circumstance. In fashioning an RFC for the plaintiff and denying this disability claim, the ALJ has apparently rejected the unanimous views of the medical experts who have all stated that Flanders experiences marked to moderate impairments when interacting with the public, coworkers, and the supervisors. The ALJ has followed this course even though the ALJ expressly found that one of these medical opinions, which concluded that Flanders was markedly limited in interacting with the public and moderately impaired in dealing with co-workers and supervisors, was "very persuasive." (Tr. 30). Despite this explicit factual finding, the ALJ paradoxically crafted a residual functional capacity assessment for Flanders which compelled him to do that which the persuasive medical opinion stated he could not do—that is, engage in "frequent interaction with supervisors, coworkers and the public." (Tr. 26).

More is needed here. It is axiomatic that the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). This means that there must be a logical nexus between the ALJ's factual findings and legal conclusion. That logical

16

bridge is missing here. On the current record, it seems that the ALJ failed to consider uncontested medical evidence, discounted a medical opinion that the ALJ declared very persuasive, and arrived at an RFC which the persuasive opinion evidence indicated Flanders could not perform. Since the ALJ's burden of articulation is not met in the instant case, this matter must be remanded for further consideration by the Commissioner. Yet, while we reach this result, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand.

## IV.   __Conclusion__

Accordingly, for the foregoing reasons, IT IS ORDERED that the plaintiff's request for a new administrative hearing is GRANTED, the final decision of the Commissioner denying these claims is vacated, and this case is remanded to the Commissioner to conduct a new administrative hearing.

An appropriate order follows.

/s/ _Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge

September 30, 2021

17